UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY VEEDER,

        CASE NO. 17-cv-11690
   *Plaintiff*,     DISTRICT JUDGE TERRENCE G. BERG
v.        MAGISTRATE JUDGE PATRICIA T. MORRIS

MICHIGAN DEPARTMENT OF CORRECTIONS,
TRI-CAP, BOARD OF DIRECTORS, GARY DAVIS,
VICKI ERVIN, JANET COCHRAN, LACROSS,
ERIC BURGESS, SANDRA EAGLE, and
BRIAN MANGAPORA,

   *Defendants*.
_____/

**REPORT AND RECOMMENDATION TO *SUA SPONTE* PARTIALLY DISMISS PLAINTIFF'S COMPLAINT AND ON PLAINTIFF'S MOTION FOR ACCESS TO LAW LIBRARY, LEGAL RESEARCH, AND THE COURTS (Doc. 3); MOTION TO TRANSFER PLAINTIFF TO A FACILITY WITH A LAW LIBRARY OR ACCESS TO ONE (Doc. 6); AND MOTION FOR DISCOVERY AND INTERROGATORIES (Doc. 7)**

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the following defendants be **DISMISSED** because the complaint fails to state a claim against them upon which relief can be granted: "Ms. Beaman," Janet Cochran, Gary Davis, Vicki Ervin, "Mr. Floyd," "Mr. Lacross," the Michigan Department of Corrections ("MDOC"), Pamela Nadzan, Heidi Washington, and "Mr. Williams." In addition, **IT IS RECOMMENDED** that all claims against Defendants in their official capacities be **DISMISSED**.

1

If this Report is adopted, the remaining defendants would be Open Door; TRI-CAP and its employee Eric Burgess; New Paths, Inc., and its employees "Mr. Hutchinson," "Ms. Lewis," and Burnetta Mitchell; and Midland County employees Sandra Eagle, Brian Mangapora, and William Raleigh.

Additionally, **IT IS RECOMMENDED** that the Plaintiff's Motion for Access to the Law Library, Legal Research, Access to the Courts, (Doc. 3); Motion To Transfer Plaintiff to a Facility with a Law Library or Access to One, (Doc. 6); and Motion for Discovery and Interrogatories, (Doc. 7), be **DENIED**.

## II.  REPORT

### A.  Introduction

On May 22, 2017, Plaintiff Randy Veeder filed this *pro se* action. (Doc. 1). The case was referred to the undersigned magistrate judge for pretrial proceedings. (Doc. 16). Plaintiff's application to proceed without prepayment of fees was granted pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(a)(1). (Doc. 11). After screening the *pro se* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), I find that the case is ready for report and recommendation.

### B.  Screening Procedure and Governing Law

In enacting the original *in forma pauperis* ("IFP") statute, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Therefore, Congress enacted a screening procedure,

*see* 28 U.S.C. § 1915(e)(2)(B), which requires that the court review all complaints where the plaintiff is proceeding IFP and *sua sponte* dismiss a case before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

> Further, federal law provides that:
>
> The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted.

42 U.S.C. § 1997e(c)(1).

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the plaintiff's complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007).

3

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

### C. The Complaint

On May 22, 2017, Plaintiff filed his initial complaint. Over the course of the next six months, he made four motions to amend his complaint. (Docs. 9, 13, 15, 19). On January 2, 2018, the Court granted his most recent motion to amend, (Docs. 19, 20), and thus his proposed amended complaint supplanted his initial complaint. His other motions to amend were then dismissed as moot. (Doc. 20).

Plaintiff, who is a pro se prisoner currently incarcerated at Macomb Correctional Facility, names upwards of a dozen defendants: staff and directors of residential treatment programs TRI-CAP and New Paths, Inc., his parole agent and probation officer and their supervisor, and MDOC and its director. (Doc. 19 at 12-19). I note that although Plaintiff states he is seeking damages from, among other parties, "TRI-CAP staff" and "staff . . . of New Paths, Inc.," (*id.* at 12), he does not include them in what appears to be a list of defendants on page 15. (*Id.* at 15). Nor do TRI-CAP or New Paths, Inc., themselves appear on the list. (*Id.*). Plaintiff did, however, include both in his case caption, and he makes allegations at large about both organizations, as well as about Open Door. (*See* Doc. 19). When a plaintiff proceeds without counsel, the court must

4

liberally construe the complaint. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, I suggest the Court also construe Plaintiff's complaint to name Open Door, TRI-CAP, and New Paths, Inc., as defendants.

Plaintiff sues all defendants in their personal and official capacities, and seeks only monetary damages. (*Id.* at 12-13).

Against this host of defendants, Plaintiff levies accusations of numerous civil rights violations, beginning in July 2015 in Midland County. (Doc. 19). There, his parole agent Sandra Eagle and her supervisor, William Raleigh, "forced [Plaintiff] to reside at the Open Door . . . a homeless shelter that is run by a church in Midland." (*Id.* at 2). He states that Open Door forced its residents to "wake up and attend prayer every morning, also Tuesday night meeting, religious speaker, coffe[e] house every month, and attend church on Sundays." (*Id.*). Plaintiff asserts that "Corrections employee[s were] constantly trying to force the Plaintiff to 'choose a religion' or force the Plaintiff into some kind of faith-based program or housing." (*Id.* at 2-3).

He has similar complaints about the TRI-CAP residential program, where he says his caseworker and other staff "forced [him] to attend a faith based," church-run program called "RU" to meet a weekly hours requirement. (*Id.* at 4). Failure to meet the requirement could have resulted in a write up, termination from the program, a probation or parole violation, and jail or prison time. (*Id.*).

While Plaintiff was a resident at TRI-CAP, he alleges, Eagle and probation agent Brian Mangapora (alternately spelled "Magipora") "forced" him to participate in a program that put him to work in a Saginaw cemetery. (*Id.* at 3). He describes working

outside in winter without proper food or clothing, and also complains that he had to work as a pall bearer and "acknowledge and participate with ceremony from family's church, pastor and prayer." (*Id.* at 3-4).

A significant portion of Plaintiff's complaint revolves around an incident that occurred at TRI-CAP on February 17, 2017, as Plaintiff and others returned from work. (*Id.* at 5). TRI-CAP staff routinely strip-searched returning residents, but Plaintiff alleges that on this occasion, the search crossed a line into sexual assault. (*Id.*). He describes how TRI-CAP staff member Lacross instructed the residents to strip and stand with their hands against the wall, and then spread each resident's buttocks to search for contraband in the anal cavity. (*Id.*). Lacross had never touched Plaintiff's buttocks during a search before, and Plaintiff makes no allegation that any employee has done so since. (*Id.*).

When the incident came up during group therapy that night, the residents' therapist informed them that they could call the police and make a complaint. (*Id.* at 7). Plaintiff and five other residents called 911, and when police arrived, Lacross's supervisor Eric Burgess entered the therapy group and sent the therapist home (another therapist filled in for the rest of the night). (*Id.*). Burgess remained in the room and sent text messages to Lacross while Plaintiff and other residents made their statements to police, which Plaintiff viewed as intimidation. (*Id.* at 6).

Plaintiff argues that Burgess violated HIPAA confidentiality by entering their group therapy session and sending the therapist home, as well as by relaying to other residents and staff what the therapist had discussed with residents. (*Id.* at 7). Further,

6

Plaintiff says he was "humiliated and degraded" for making a statement to police. (*Id.* at 8).

This specific occasion aside, Plaintiff also complains Burgess "had previously asked Veeder and other residents 'where are the drugs at[,] in your ass?' and had his cell phone out and turned on in bathroom at TRI-CAP during strip search." (*Id.* at 17). He asserts that Davis, Beaman, Ervin, Cochran, and Nadzan had been made aware of "numerous" complaints about Burgess and took no action. (*Id.* at 6, 17).

Mangapora and Eagle were also aware of Plaintiff's complaints about TRI-CAP and "ignored" his request for a pass to access legal materials or "to talk to a[n] attorney to make a complaint." (*Id.* at 8). Mangapora informed Plaintiff that if he was uncomfortable being at TRI-CAP, he could move Plaintiff to New Paths, Inc., but that Plaintiff would have to start over with no credit for the time he had spent at TRI-CAP. (*Id.*).

On April 20, 2017, Plaintiff absconded from TRI-CAP and was arrested and sentenced to 30 days in jail. (*Id.* at 9). He was then ordered to enter a residential program at New Paths, Inc., in Flint, Michigan. (*Id.*).

Plaintiff told his caseworker, Ms. Mitchell, that he needed access to legal materials and described his complaints about TRI-CAP, to which Mitchell responded that "he would not be allowed to have any access to any legal materials or . . . a pass for that purpose." (*Id.* at 9-10). Other staff at New Paths, Inc., including the director, Mr. Hutchinson, gave him the same answer. (*Id.* at 10).

Plaintiff makes several additional allegations of civil rights violations that occurred at New Paths, Inc. First, he asserts his due process rights were violated when

7

Mitchell and Lewis made him "restart the SUD program" for taking items from an open vending machine without issuing him a write-up or providing a hearing. (*Id.* at 10, 18). The incident also resulted in probation violation proceedings. (*Id.*).

Second, Plaintiff argues his First Amendment rights were violated when Mitchell "and staff" terminated him from New Paths, Inc., for making a Facebook post from his cell phone about the "poor conditions of living" at the facility. (*Id.* at 11, 19). Additionally, he says that his due process rights were violated because he had no chance to challenge the violation and no notice of or hearing regarding the termination. This is despite the fact, according to Plaintiff, that "[r]esidents at New Paths Inc. are allowed to have cell phones outside in the lockbox," and there are "no rules against having internet or social networking." (*Id.* at 10).

The alleged constitutional violations described above caused Plaintiff "[e]motional and mental anguish, loss of freedom, anxiety, nightmares, panic attacks . . . [and] humiliation." (*Id.* at 13).

**D. Analysis and Conclusions**

**1.     Defendant Michigan Department of Corrections**

As an initial matter, I suggest that defendant MDOC is entitled to summary judgment because the claims against it are barred by the Eleventh Amendment. States and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v.*

*Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Since Congress has not abrogated Eleventh Amendment immunity by statute, and since the State of Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), I suggest that the State of Michigan—including MDOC—remains immune from suit. Thus, I suggest that the suit against MDOC should be dismissed.

### 2.     Official capacity

A lawsuit "against a government officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, suing employees of state agencies or their political subdivisions in an official capacity is the same as suing the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Here, Congress has not abrogated Eleventh Amendment immunity by statute or expressly in § 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and Michigan has not consented to suit, *Johnson v. Unknown Dellatrif*, 357 F.3d 539, 545 (6th Cir. 2004).

It is true that where a plaintiff challenges the constitutionality of a state official's action, the Eleventh Amendment does not prohibit prospective injunctive relief. *Pennhurst*, 465 U.S. at 102-03. Here, however, Plaintiff requests only pecuniary relief.

Thus, I suggest that any claims against a defendant in his or her official capacity is barred by Eleventh Amendment immunity and should be dismissed.

### 3. Defendants Beaman, Cochran, Davis, Ervins, Floyd, Nadzan, Washington, and Williams

A few names that appear in Plaintiff's list of defendants are accompanied by little or no explanation in the complaint itself: Beaman, Cochran, Davis, Ervins, Floyd, Nadzan, Heidi Washington (director of MDOC), and Williams.

I turn first to Plaintiff's allegations—or lack thereof—against Floyd and Williams. In a claim under § 1983, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *see also Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976) (a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant). Even assuming that Floyd and Williams— employees of a residential treatment facility contracted with the state—are state actors, I suggest their dismissal is still appropriate. Floyd and Williams's names are nowhere to be found in the meat of Plaintiff's complaint. He attributes no specific actions to them whatsoever, let alone constitutional violations. As Plaintiff has failed to adequately plead claims against Floyd and Williams, I suggest the Court dismiss them as defendants.

As for Heidi Washington, the only allegations Plaintiff levies against her are as follows: "In 2015 to 2017 Heidi Washington . . . allow[ed] him to be placed at TRI-CAP, New Paths Inc" and "allow[ed] supervisor, and Midland County Parol[e] and Probation

William Raleigh and Sandra Eagle [and] Brian Mangapora to force Randy Veeder to reside and live at the Open Door." (*Id.* at 16). But § 1983 liability "must be premised on more than mere respondeat superior, the right to control one's employees." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A supervisor cannot be held liable under § 1983 absent a showing that the supervisor either directly participated in or at least implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct. *See, e.g.*, *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). As Plaintiff's allegations against Washington fail to transcend mere respondeat superior, it would be proper for the court to dismiss her as a defendant.

Further, the sum of Plaintiff's allegations regarding Beaman, Cochran, Davis, Ervins, and Nadzan is that they were aware of "numerous" complaints about Burgess and took no action. (*Id.* at 6, 17). This claim should also fail, as the "denial of administrative grievances or the failure to act" by prison officials does not subject supervisors to liability under § 1983. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *see also Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A supervisory official's failure to supervise, control, or train the offending person is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays*, 668 F.2d at 874. Plaintiff makes no such allegation here, and thus I suggest it would be appropriate for the Court to dismiss Beaman, Cochran, Davis, Ervins, and Nadzan as defendants.

11

### 4. Eighth Amendment claim

I now turn to Plaintiff's claim based in the alleged sexual harassment by Lacross. In *Jackson v. Madery*, the Sixth Circuit affirmed that Eighth Amendment claims must overcome two hurdles: (1) "the alleged force should be 'objectively harmful enough to establish a constitutional violation'"—that is, harmful enough to contravene "contemporary standards of decency"—and (2) "the official must have acted with a sufficiently culpable state of mind." *Jackson v. Madery*, 158 F. App'x. 656, 661 (6th Cir. 2005) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9. Moreover, "a prison official who sexually abuses a prisoner can be found to have a sufficiently culpable state of mind to violate the prisoner's constitutional rights." *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997). The Eighth Amendment will not, however, condemn "de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (internal quotation marks omitted).

Plaintiff's allegations are strikingly similar to those in *Jackson v. Madery*, in which a prison guard grabbed a prisoner's buttocks "in a degrading and humiliating manner during a 'shakedown' in the prison food area." *Jackson v. Madery*, 158 F. App'x. 656, 661-62 (6th Cir. 2005). Though the Sixth Circuit found the guard's actions worthy of condemnation, it nevertheless held that they did not rise to the level of a constitutional violation. *Id.*; *see also Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir.

May 11, 2000) (prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment). I suggest Plaintiff here has similarly failed to state a constitutional claim stemming from the incident with Lacross. It would therefore be appropriate for the Court to dismiss Lacross from this action, because this was the only claim in which Plaintiff alleged Lacross's involvement.

### 5. HIPAA claim

Next, to the extent that Plaintiff alleges a violation of HIPAA, I suggest that he fails to state a cognizable claim. Although the Sixth Circuit has not yet addressed whether HIPAA creates a private right of action, several circuits have held that it does not. *E.g.*, *Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg,* 610 F.3d 530, 533 (9th Cir. 2010); *Wilkerson v. Shinseki,* 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010); *Miller v. Nichols,* 586 F.3d 53, 59 (1st Cir. 2009); *Acara v. Banks,* 470 F.3d 569, 572 (5th Cir. 2006). Additionally, a Tennessee district court noted that "[s]trict construction of the statute's text supports this conclusion," as Congress must create private rights of action to enforce federal law, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), and HIPAA only expressly authorizes the state attorney general to bring HIPAA actions on behalf of state residents. *Clark v. Nashville General Hosp. at Meharry*, Civil No. 3:14-1048, 2014 WL 2560505, at *1 (M.D. Tenn. June 6, 2014) (citing 42 U.S.C. § 1320d-5(d)). Penalties for violations of HIPAA are imposed by the Secretary of Health and Human Services. 42 U.S.C. § 1320d-5(a)(1). "Because HIPAA specifically delegates enforcement, there is a strong indication that Congress intended to preclude private enforcement." *Acara*, 470

F.3d at 571 (quoting *Alexander*, 532 U.S. at 586-89 ("The express provision of one method of enforcing [a statute] suggests Congress intended to preclude others.")). Thus, I recommend the Court dismiss Plaintiff's claim under HIPAA.

### 6. Plaintiff's Additional Motions

#### a. Motions for Injunctive Relief

On May 25, 2017, Plaintiff filed a "Motion for Access to the Law Library, Legal Research, Access to the Courts." (Doc. 3). In it, he seeks "a restraining order from M.D.O.C. or Midland County 42nd judicial circuit court from [placing] Randy Loren Veeder back at TRI-CAP where the sexual assault, Harrassment [sic] and denial of his right to access to the courts, furthermore, an injunction or restraining order from being placed at any other treatment facility where there is no law library or meaningfull [sic] access to the courts, [research] materials, [etc.]." (Doc. 3 at 3-4). Injunctive relief is a discretionary remedy from which courts traditionally abstain unless the controversy is ripe for judicial resolution. *See National Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 285 (6th Cir.1997). Under the ripeness doctrine, a matter is considered premature for judicial review when the alleged injury is speculative or may never occur. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998). In this case, Plaintiff is currently incarcerated at Macomb Correctional Facility. He has not alleged that he faces any risk of being placed in a treatment facility in the future, let alone a treatment facility without a law library or meaningful access to the courts. Indeed, his own complaint makes clear that he absconded from one residential treatment program, and was terminated from another. He is now serving a prison sentence for which his earliest

14

release date is in June 2020. Thus, I suggest his motion is not ripe for decision and recommend the Court deny Plaintiff's Motion for Access to the Law Library, Legal Research, Access to the Courts. (Doc. 3).

On June 12, 2016, Plaintiff filed a "Motion To Transfer Plaintiff to a Facility with a Law Library or Access to One." (Doc. 6). That motion hinged on his residence at New Paths, Inc.; as he is now incarcerated at Macomb Correctional Facility, his motion has been rendered moot. I therefore recommend the Court also deny Plaintiff's Motion To Transfer Plaintiff to a Facility With a Law Library or Access to One. (Doc. 6).

### b. Motion to Compel Discovery

On June 5, 2017, Plaintiff filed a "Motion for Discovery and Interrogatories." (Doc. 7). As no defendants have yet been served in this case, and discovery has not begun, I suggest that it would be premature for the Court to order Defendants to produce any discovery materials at this time. Thus, I recommend that the Court deny Plaintiff's Motion for Discovery and Interrogatories. (Doc. 7).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991);

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 10, 2018               S/ PATRICIA T. MORRIS
                                     Patricia T. Morris
                                     United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Randy Veeder #244093 at Macomb Correctional Facility, 24625 26 Mile Road, New Haven, MI 48048.

Date: January 10, 2018               By s/Kristen Castaneda
                                     Case Manager