UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY VEEDER,

               *Plaintiff*,

*v.*

TRI-CAP, BOARD OF DIRECTORS,
ERIC BURGESS, SANDRA EAGLE,
BRIAN MAGIPORA, HUTCHINSON,
LEWIS, BURNETTA MITCHELL,
OPEN DOOR, NEW PATHS, INC.,
and WILLIAM RALEIGH,

               *Defendants*.

_____/

CASE NO. 17-cv-11690

DISTRICT JUDGE TERRENCE G. BERG

MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that TRI-CAP's and Burgess's Motion To Dismiss (Doc. 35) be **GRANTED IN PART** and that Burgess be dismissed from this suit. In addition, **IT IS RECOMMENDED** that Plaintiff's claims against the following defendants also be dismissed: Board of Directors, Hutchinson, Lewis, and Burnetta Mitchell.

## II.    REPORT

### A.    Introduction

On May 22, 2017, Plaintiff Randy Veeder filed this *pro se* action against Defendants Michigan Department of Corrections ("MDOC"), TRI-CAP, Board of Directors, Gary Davis, Vicki Ervin, Janet Cochran, Lacross, Eric Burgess, Sandra Eagle,

Brian Magipora, Heidi Washington, Beaman, Pamela Nadzan, Hutchinson, Williams, Floyd, Lewis, Burnetta Mitchell, Open Door, and New Paths, Inc., and William Raleigh. (Doc. 1). This Court later approved an Amended Complaint. (Doc. 25). On November 3, 2017, the case was referred to the undersigned magistrate judge for pretrial proceedings. (Doc. 16). Plaintiff's application to proceed without prepayment of fees was granted pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(a)(1). (Doc. 11). After screening the *pro se* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), I recommended dismissing Plaintiff's claims against Beaman, Cochran, Davis, Ervin, Floyd, Lacross, MDOC, Nadzan, Washington, and Williams, (Doc. 21); the Court adopted my recommendation on March 28, 2018, (Doc. 23).

On May 2, 2018, Burgess and TRI-CAP filed the instant Motion To Dismiss. (Doc. 35). Plaintiff responded on May 31, 2018. Accordingly, this matter is ripe for report and recommendation.

## B.   The Complaint

On May 22, 2017, Plaintiff filed his initial complaint. Over the course of the next six months, he made four motions to amend his complaint. (Docs. 9, 13, 15, 19). On January 2, 2018, the Court granted his most recent motion to amend, (Docs. 19, 20), and thus his proposed amended complaint supplanted his initial complaint. *See* (Doc. 25). His other motions to amend were then dismissed as moot. (Doc. 20).

Against this host of defendants, Plaintiff levies accusations of numerous civil rights violations, beginning in July 2015 in Midland County. (Doc. 25). There, his parole agent Sandra Eagle and her supervisor, William Raleigh, "forced [Plaintiff] to reside at

2

the Open Door . . . a homeless shelter that is run by a church in Midland." (*Id.* at PageID.134). He states that Open Door forced its residents to "wake up and attend prayer every morning, also Tuesday night meeting, religious speaker, coffe[e] house every month, and attend church on Sundays." (*Id.*). Plaintiff asserts that "Corrections employee[s were] constantly trying to force the Plaintiff to 'choose a religion' or force the Plaintiff into some kind of faith-based program or housing." (*Id.* at PageID.134-135).

He has similar complaints about the TRI-CAP residential program, where he says his caseworker and other staff "forced [him] to attend a faith based," church-run program called "RU" to meet a weekly hours requirement. (*Id.* at PageID.136). Failure to meet the requirement would allegedly have resulted in a write up, termination from the program, a probation or parole violation, and jail or prison time. (*Id.*).

While Plaintiff was a resident at TRI-CAP, he alleges, Eagle and probation agent Brian Magipora "forced" him to participate in a program that put him to work in a Saginaw cemetery. (*Id.* at PageID.135). He describes working outside in winter without proper food or clothing, and also complains that he had to work as a pall bearer and "acknowledge and participate with ceremony from family's church, pastor and prayer." (*Id.* at PageID.135-136).

A significant portion of the Amended Complaint revolves around an incident that occurred at TRI-CAP on February 17, 2017, as Plaintiff and others returned from work. (*Id.* at PageID.137). TRI-CAP staff routinely strip-searched returning residents, but Plaintiff alleges that on this occasion, the search crossed a line into sexual assault. (*Id.*). He describes how TRI-CAP staff member Lacross instructed the residents to strip and

3

stand with their hands against the wall, and then spread each resident's buttocks to search for contraband in the anal cavity. (*Id.*). Lacross had never touched Plaintiff's buttocks during a search before, and Plaintiff makes no allegation that any employee has done so since. (*Id.*). He also alleges that Lacross's supervisor, Burgess, participated in this invasive instruction, and "trained" staff to perform strip searches. (*Id.* at PageID.138).

When the incident came up during group therapy that night, the residents' therapist informed them that they could call the police and make a complaint. (*Id.* at PageID.139). Plaintiff and five other residents called 911, and when police arrived, Burgess entered the therapy group and sent the therapist home (another therapist filled in for the rest of the night). (*Id.*). Burgess remained in the room and sent text messages to Lacross while Plaintiff and other residents made their statements to police, which Plaintiff viewed as intimidation. (*Id.* at PageID.138).

Plaintiff argues that Burgess violated HIPAA confidentiality by entering their group therapy session and sending the therapist home, as well as by relaying to other residents and staff what the therapist had discussed with residents. (*Id.* at PageID.139). Further, Plaintiff says he was "humiliated and degraded" for making a statement to police. (*Id.* at PageID.140).

This specific occasion aside, Plaintiff also complains Burgess "had previously asked Veeder and other residents 'where are the drugs at[,] in your ass?' and had his cell phone out and turned on in bathroom at TRI-CAP during strip search." (*Id.* at PageID.149). He asserts that Davis, Beaman, Ervin, Cochran, and Nadzan had been made

aware of "numerous" complaints about Burgess and took no action. (*Id.* at PageID.138, 149).

Magipora and Eagle were also aware of Plaintiff's complaints about TRI-CAP and "ignored" his request for a pass to access legal materials or "to talk to a[n] attorney to make a complaint." (*Id.* at PageID.140). Magipora informed Plaintiff that if he was uncomfortable being at TRI-CAP, he could move Plaintiff to New Paths, but that Plaintiff would have to start over with no credit for the time he had spent at TRI-CAP. (*Id.*).

On April 20, 2017, Plaintiff absconded from TRI-CAP and was arrested and sentenced to 30 days in jail. (*Id.* at PageID.141). He was then ordered to enter a residential program at New Paths, in Flint, Michigan. (*Id.*).

Plaintiff told his caseworker, Mitchell, that he needed access to legal materials and described his complaints about TRI-CAP, to which Mitchell responded that "he would not be allowed to have any access to any legal materials or . . . a pass for that purpose." (*Id.* at PageID.141-142). Other staff at New Paths, including the director, Hutchinson, gave him the same answer. (*Id.* at PageID.142).

Plaintiff makes several additional allegations of civil rights violations that occurred at New Paths. First, he asserts his due process rights were violated when New Paths staff made him "restart the SUD program" for taking items from an open vending machine without issuing him a write-up or providing a hearing. (*Id.* at PageID.142, 150). The incident also resulted in probation violation proceedings. (*Id.*).

Second, Plaintiff argues his First Amendment rights were violated when Mitchell "and staff" terminated him from New Paths for making a Facebook post from his cell

phone about the "poor conditions of living" at the facility. (*Id.* at PageID.143, 151).

Additionally, he says that his due process rights were violated because he had no chance

to challenge the violation and no notice of or hearing regarding the termination. This is

despite the fact, according to Plaintiff, that "[r]esidents at New Paths Inc. are allowed to

have cell phones outside in the lockbox," and there are "no rules against having internet

or social networking." (*Id.* at PageID.142).

The alleged constitutional violations described above caused Plaintiff "[e]motional

and mental anguish, loss of freedom, anxiety, nightmares, panic attacks . . . [and]

humiliation." (*Id.* at PageID.145).

### C.      Motion To Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the

complaint with regard to whether it states a claim upon which relief can be granted.

When deciding a motion under this subsection, "[t]he court must construe the complaint

in the light most favorable to the plaintiff, accept all the factual allegations as true, and

determine whether the plaintiff can prove a set of facts in support of its claims that would

entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.

2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must

be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can

be granted if the complaint does not plead "enough facts to state a claim to relief that is

plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6)

standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6),

"a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

6

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §

7

1357 (2d. ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which she complains was committed by a person acting under color of state law and (2) the conduct deprived her of a federal constitutional or statutory right. In addition, a plaintiff must allege that she suffered a specific injury as a result of the conduct of a particular defendant and she must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

### D.    Analysis and Conclusion

#### 1.    Motion To Dismiss TRI-CAP and Burgess

In their Motion To Dismiss, TRI-CAP and Burgess ("moving Defendants") argue that the "vague, rambling nature of the Amended Complaint" makes determining Plaintiff's claims against them difficult. (Doc. 35 at PageID.198). They ask that Plaintiff's Amended Complaint be dismissed as to them, or in the alternative, that this Court require Plaintiff to provide a "more definite statement" under Federal Rule of Civil Procedure 12(e). (*Id.*).

Moving Defendants are correct that Plaintiff fails to state a claim against Burgess. As I noted in my prior report and recommendation, Plaintiff's allegations against Lacross did not state a claim for a constitutional violation. *See* (Doc. 21 at PageID.110-111). Likewise, Plaintiff fails to allege that Burgess personally participated in any constitutional violation or enforced an unconstitutional strip-search policy. *See Center for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 818-19 (6th Cir. 2007) (explaining that *Monell* liability inures to defendants who administer an unconstitutional policy or apply a constitutional policy in an unconstitutional manner). Plaintiff argues that Burgess violated HIPAA confidentiality by entering their group therapy session and sending the therapist home, as well as by relaying to other residents and staff what the therapist had discussed with residents. (*Id.* at PageID.139). However, the HIPAA claim was dismissed pursuant to the order adopting the previous R&R.

The Amended Complaint does, however, state a claim that TRI-CAP unconstitutionally violated Plaintiff's First-Amendment religious rights. Plaintiff contends that he "was forced to attend a faith-based program . . . at TRI-CAP. Caseworker and other staff made some residents attend to meet [their] weekly required hours of 10 hours a week or more. . . . Not meeting hours required by TRI-CAP rules . . . can and would result in resident being wrote up, terminated, probation or parole violated, jail and prison." (Doc. 25 at PageID.136). As my former recommendation implicitly found, Plaintiff's allegations adequately state a claim that TRI-CAP endorsed an unconstitutional policy. *Cf. Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) ("[R]equiring a parolee to attend religion-based treatment programs violates the First

Amendment."); *Freedom from Religion Foundation, Inc. v. McCallum*, 324 F.3d 880, 882 (7th Cir. 2003) ("Parole officers who recommend [a religious halfway house] are required to offer the offender a secular halfway house as an alternative."). Plaintiff's claim against TRI-CAP should survive the instant Motion.

### 2.    Additional Screening

In enacting the original *in forma pauperis* ("IFP") statute, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Therefore, Congress enacted a screening procedure, *see* 28 U.S.C. § 1915(e)(2)(B), which requires that the court review all complaints where the plaintiff is proceeding IFP and *sua sponte* dismiss a case before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Further, federal law provides that:

> The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted.

42 U.S.C. § 1997e(c)(1).

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the plaintiff's complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519,

520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007).

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

### i.   **Hutchinson and Mitchell**

Plaintiff alleges that Hutchinson and Mitchell blocked his access to a law library in violation of his First Amendment right of access to the courts. (Doc. 25 at PageID.141-142). He does not, however, adequately describe how their conduct impeded his pursuit of a cognizable constitutional claim.

In *Bounds v. Smith*, the Supreme Court held that the Constitution entitles prisoners to "a reasonably adequate opportunity to present claimed violations of fundamental

11

constitutional rights to the courts" via "adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 825, 828 (1977). This right was itself fundamental because it empowered prisoners in "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights," which "are the first line of defense against constitutional violations." *Id.* at 827-28. Over time, the Supreme Court explained that standing to bring a right-of-access claim requires a showing of "actual injury," which in turn stems from the nature of the underlying claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Justice Scalia, writing for the Court, elaborated on the sorts of claims whose blockage causes actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.* Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (emphasis added). In other words, an underlying claim can 'actually injure' only if it is a direct appeal, a habeas petition, or an "action[] under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights,'" (*i.e.*, conditions of confinement). *Id.* at 354 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). A frivolous underlying claim precludes a finding of actual injury. *See id.* at 353 n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts

12

frustrating the litigation."); *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) ("By explicitly requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the 'actual injury' requirement as it had previously been applied in this circuit."). The Sixth Circuit has strictly construed the Supreme Court's language, and guarantees to prisoners nothing more than the constitutional minimum illustrated in *Lewis*. *See Thaddeus-X v. Bladder*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (reflecting on the Supreme Court's language in *Lewis* and limiting the right of access to "direct appeals, habeas corpus applications, and civil rights claims only."); *see also Green v. Johnson*, No. 13-12305, 2014 WL 4054334, at *3 (E.D. Mich. Aug. 14, 2014) (discussing the Sixth Circuit's narrow construction of *Lewis*'s language, and adhering closely to it); *Mikko v. Davis*, 342 F. Supp. 2d 643, 646 (E.D. Mich. 2004) (same).[1]

The elements of a viable access-to-courts claim in the Sixth Circuit are: (1) "a non-frivolous underlying claim"; (2) "obstructive actions by state actors"; (3) "'substantial[] prejudice' to the underlying claim that cannot be remedied by the state court"; and (4) "a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal citations omitted). Because the underlying claim "is an element that must be described in the complaint," claimants should thus provide a description of the underlying claim sufficient to "give fair notice to a defendant" and "to

---

[1] Taken out of context, the standard articulated in *Thaddeus-X* ostensibly contemplates a broader right of access than that articulated in *Lewis*, particularly with respect to the phrase "civil rights claims." *Thaddeus-X*, 175 F.3d at 391. However, the Sixth Circuit frames its language as a *rephrasing* of the same "carefully-bounded right" described in *Lewis*, rather than an *expansion* of the constitutional minimum.

apply the 'nonfrivolous' test" to its contents. *Christopher*, 536 U.S. at 415-16. And, as noted above, the right of access to the courts extends to "direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, at 391. If the plaintiff has been denied access to a meritorious personal injury case in state court, for example, he has no redress in federal court.

In the Amended Complaint at issue, Plaintiff omits details as to his underlying constitutional claim and the prejudice that befell that claim due to interference from Hutchinson and Mitchell. As such, his claims against Hutchinson and Mitchell should be dismissed for failure to state a claim. *Accord, e.g.*, *Kyle v. Rehab*, No. 1:12-CV-584, 2012 WL 2915487, at *3 (W.D. Mich. June 19, 2012), *R. & R. adopted sub nom. Kyle v. Project Rehab*, No. 1:12-CV-584, 2012 WL 2913216 (W.D. Mich. July 17, 2012) ("In the controlling case of *Lewis v. Casey* . . . the Supreme Court held that no claim for interference with this right exists unless plaintiff alleges that defendants prevented him from filing a non-frivolous legal claim challenging his conviction or seeking vindication of federally guaranteed rights." (quoting 518 U.S. 343, 351-54 (1996))).

### ii.    Lewis

Despite being named a defendant in this suit, Plaintiff fails to include any specific allegations about Lewis's conduct in his Amended Complaint. As such, his claims against Lewis should be dismissed. *E.g.*, *Bright v. Thompson*, 467 F. App'x 462, 464 (6th Cir. 2012) (no liability without personal involvement in the alleged constitutional deprivation).

### iii.     Board of Directors

Plaintiff names the TRI-CAP Board of Directors in his complaint, and suggests its failure to properly train its staff to strip search prisoners renders it a constitutional tortfeasor under § 1983. (Doc. 25 at PageID.138). As I found in my prior recommendation—and reiterated in the above analysis respecting Burgess—Plaintiff fails to identify a problem of constitutional proportions with the policy implemented at TRI-CAP. *See Center for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 818-19 (6th Cir. 2007) (explaining that *Monell* liability inures to defendants who administer an unconstitutional policy or apply a constitutional policy in an unconstitutional manner). He does not reference specific conduct by the Board of Directors at any other juncture in his Amended Complaint. For this reason, Plaintiff's claims against Board of Directors should be dismissed.

### E.     Conclusion

In light of the above analysis, **IT IS RECOMMENDED** that TRI-CAP's and Burgess's Motion To Dismiss be **GRANTED IN PART** and that Burgess be dismissed from this suit. In addition, **IT IS RECOMMENDED** that Plaintiff's claims against the following defendants also be dismissed: Board of Directors, Hutchinson, Lewis, and Burnetta Mitchell.

## III.     <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A

15

party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 27, 2018                                   S/ PATRICIA T. MORRIS
                                                       Patricia T. Morris
                                                       United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Randy Veeder #244093 at Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784.

Date: July 27, 2018                          By <u>s/Kristen Castaneda</u>
                                             Case Manager

17