**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RANDY VEEDER,

                                CASE NO. 17-cv-11690

          *Plaintiff*,             DISTRICT JUDGE TERRENCE G. BERG

*v.*                              MAGISTRATE JUDGE PATRICIA T. MORRIS

TRI-CAP, BOARD OF DIRECTORS,
ERIC BURGESS, SANDRA EAGLE,
BRIAN MAGIPORA,[1] HUTCHINSON,
LEWIS, BURNETTA MITCHELL,
OPEN DOOR, NEW PATHS, INC.,
and WILLIAM RALEIGH,

          *Defendants*.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT EAGLE
AND MAGIPORA'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
(R. 50)
AND FOR SUA SPONTE DISMISSAL OF CLAIMS AGAINST DEFENDANTS
MAGIPORA AND ALL CLAIMS EXCEPT THE CLAIM RELATING TO
RELIGIOUS PROGRAMMING AGAINST OPEN DOOR**

**I.**    **Recommendation**

         For the reasons stated below, **IT IS RECOMMENDED** that Defendants Eagle and

Magipora's motion (Doc. 50) be **GRANTED IN PART AND DENIED IN PART**, e.g.,

that the motion to dismiss claims regarding the alleged sexual assault be **GRANTED,** that

their motion for summary judgment on claims relating to religious programming at Open

---

[1] I note that this spelling is the spelling listed on the Court's docket but that Defendant uses the spelling Mangapora. See, e.g., R. 50 at PageID.265. For ease of reference, I will use the spelling on the Court's docket.

Door be **DENIED**, and that claims against Defendant Magipora concerning Open Door be *sua sponte* **DISMISSED**.

II.   **Report**

      A.   **Background**

On May 22, 2017, Plaintiff Randy Veeder filed this pro se action against the above Defendants and others since dismissed from the case. (Doc. 1). This Court later approved an Amended Complaint. (Doc. 25). On November 3, 2017, the case was referred to me for pretrial proceedings. (Doc. 16). Plaintiff's application to proceed without prepayment of fees was granted pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(a)(1). (Doc. 11). After screening the pro se complaint under 28 U.S.C. § 1915(e)(2)(B), I recommended dismissing Plaintiff's claims against various Defendants, (Doc. 21); the Court adopted my recommendation on March 28, 2018, (Doc. 23). On May 2, 2018, Burgess and Tri-Cap filed a Motion to Dismiss. (Doc. 35). Plaintiff responded on May 31, 2018. In a Report and Recommendation on July 27, 2018, I recommended granting the motion in part and, additionally, dismissing other Defendants from the suit. (Doc. 53.) That Report remains pending.

The underlying facts are more fully set out in my two earlier Reports. (Doc. 21, at PageID.102-106; Doc. 53, at PageID.320-324.) Here, I include only what is relevant to the instant motion. On May 22, 2017, Plaintiff filed his initial complaint. Over the course of the next six months, he made four motions to amend his complaint. (Docs. 9, 13, 15, 19). On January 2, 2018, the Court granted his most recent motion to amend, (Docs. 19, 20),

and thus his proposed amended complaint supplanted his initial complaint. *See* (Doc. 25). His other motions to amend were then dismissed as moot. (Doc. 20).

Against the host of Defendants, Plaintiff levies accusations of numerous civil rights violations, beginning in July 2015 in Midland County. (Doc. 25). There, his parole agent Sandra Eagle and her supervisor, William Raleigh, "forced [Plaintiff] to reside at the Open Door . . . a homeless shelter that is run by a church in Midland." (*Id.* at PageID.134). He states that Open Door forced its residents to "wake up and attend prayer every morning, also Tuesday night meeting, religious speaker, coffe[e] house every month, and attend church on Sundays." (*Id.*). Plaintiff asserts that "Corrections employee[s were] constantly trying to force the Plaintiff to 'choose a religion' or force the Plaintiff into some kind of faith-based program or housing." (*Id.* at PageID.134-135).

He has similar complaints about the Tri-Cap residential program, where he says his caseworker and other staff "forced [him] to attend a faith based," church-run program called "RU" to meet a weekly hours requirement. (*Id.* at PageID.136). Failure to meet the requirement allegedly would have resulted in a write up, termination from the program, a probation or parole violation, and jail or prison time. (*Id.*). While residing at Tri-Cap, Plaintiff alleges that Eagle and Defendant Brian Magipora, another probation agent, "forced" him to participate in a program that put him to work in a Saginaw cemetery. (*Id.* at PageID.135). He describes working outside in winter without proper food or clothing, and also complains that he had to work as a pall bearer and "acknowledge and participate with ceremony from family's church, pastor and prayer." (*Id.* at PageID.135-136).

A significant portion of the Amended Complaint revolves around an incident that occurred at Tri-Cap on February 17, 2017, as Plaintiff and others returned from work. (*Id.* at PageID.137). Tri-Cap staff routinely strip-searched returning residents, but Plaintiff alleges that on this occasion, the search crossed the line into sexual assault. (*Id.*). He describes how Tri-Cap staff member Lacross instructed the residents to strip and stand with their hands against the wall, and then he spread each resident's buttocks to search for contraband in the anal cavity. (*Id.*). Lacross had never touched Plaintiff's buttocks during a search before, and Plaintiff makes no allegation that any employee has done so since. (*Id.*). He also alleges that Lacross's supervisor, Burgess, participated in this invasive instruction and "trained" staff to perform strip searches. (*Id.* at PageID.138).

Magipora and Eagle were aware of Plaintiff's complaints about Tri-Cap and "ignored" his request for a pass to access legal materials or "to talk to a[n] attorney to make a complaint." (*Id.* at PageID.140). Magipora informed Plaintiff that if he was uncomfortable being at Tri-Cap, he could move Plaintiff to New Paths, but that Plaintiff would have to start over with no credit for the time he had spent at Tri-Cap. (*Id.*). On April 20, 2017, Plaintiff absconded from Tri-Cap and was arrested and sentenced to 30 days in jail. (*Id.* at PageID.141). He was then ordered to enter a residential program at New Paths, in Flint, Michigan. (*Id.*). He makes several allegations of civil rights violations occurring at New Paths that are not relevant here.

The alleged constitutional violations described above caused Plaintiff "[e]motional and mental anguish, loss of freedom, anxiety, nightmares, panic attacks . . . [and] humiliation." (*Id.* at PageID.145).

### B.     Analysis

Defendants[2] make two arguments. First, they contend that Plaintiff's allegations that Tri-Cap staff inappropriately strip searched him do not state a claim under 42 U.S.C. § 1983. (Doc. 50, at PageID.277.) Second, they seek summary judgment regarding Plaintiff's claim that he was forced to attend religious programming at Open Door because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).[3] I will take each argument in turn.

### 1.     Motion to Dismiss

### a.     Legal Standards

When a plaintiff proceeds without the assistance of counsel, the court is required to liberally construe the plaintiff's complaint and hold it to a less stringent standard than it would a similar attorney-drafted pleading. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the

---

[2] From this point, I will use the term "Defendants" to refer to Magipora and Eagle.

[3] Their initial brief argued for summary judgment due to failure to exhaust any of the claims, including the "allegation that either parole agent required he maintain residence at Open Door with faith-based programming, work at the cemetery, participate in faith-based programming through 'RV' at Tri-Cap, or retaliated against him for allegedly reporting the alleged inappropriate strip search." (Doc. 50, at PageID.281.) Defendants had argued that Michigan Department of Correction's (MDOC) "grievance process was available to Veeder with respect to these claims." (*Id.*) In their reply brief, however, they recognize that MDOC policy did not require Plaintiff to file grievances on the claims relating to Tri-Cap and work requirements because those claims involved conditions of probation. (Doc. 56, at PageID.369.) MDOC's "Probation/Parole Orientation Guide" provides that "Work Statements and Conditions of Parole or Probation are not grievable." (MDOC, "Probation/Parole Orientation Guide," CFJ-481, Doc. 50, exh. C., at PageID.312, 316.) Defendants consequently pare back their motion, requesting summary judgment based only on Plaintiff's failure to exhaust remedies on the claim "that either Defendant violated his First Amendment rights with respect to any participation in religious programming at Open Door." (Doc. 56, at PageID.371.)

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007).

When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Pleadings that contain "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.* at 678 (2009).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which he or she complains was committed by a person acting under color of state law and (2) the conduct deprived him or her of a federal constitutional or statutory right. In addition, a plaintiff must allege that he or she suffered a specific injury as a result of the conduct of a particular defendant and must allege an affirmative link between the injury and that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### b.    Arguments and Application

Defendants argue that Plaintiff has not stated a claim against them regarding the alleged strip search by Tri-Cap staff. (Doc. 50, at PageID.277.) The defect, according to

6

Defendants, is that the complaint does not allege they were personally involved in the search. (*Id.*) This is fatal because § 1983 claims require proof of personal involvement. (*Id.* at PageID.277-278.) Plaintiff does not respond to this argument. (Doc. 55.)

Defendants are correct that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). As such, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). In this case, I agree that Plaintiff has failed to allege that either Defendant Eagle or Magipora was personally involved in the alleged strip search at Tri-Cap. Plaintiff does not contend that either Defendant directed the search, was present during the search, or in any way encouraged it. The only allegations connecting these Defendants to Tri-Cap are that both forced him to participate in a work program while there. (Doc. 25, at PageID.135.) But that program was not related to the inappropriate search procedures at issue. Nor does Defendants' subsequent knowledge of the search show they participated in it. Consequently, I conclude that Plaintiff has failed to state a claim against Defendants regarding the search itself. I recommend that the Defendants' motion to dismiss be granted on this ground.[4]

## 2.   Motion for Summary Judgment

### a.   Legal Standards

---

[4] Of course, the claim against Lacross, the official conducting the search, was dismissed because the search did not rise to the level of an Eighth Amendment violation. (Doc. 21, at PageID.110-111; Doc. 23, at PageID.129-130.) Thus, even assuming that Plaintiff adequately alleged that Defendants were personally involved in the search, his claim would fail nevertheless.

Defendants next argue that Plaintiff failed to exhaust the available administrative remedies for Open Door's religious programming. A Rule 56 motion for summary judgment is the appropriate vehicle to raise this affirmative defense. *See Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016 ("[T]he exhaustion defense may be raised by a motion for summary judgment if the defendant successfully demonstrates that no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law on that defense.").

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. American Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

While a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not . . . 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require

9

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The exhaustion requirement comes from the Prison Litigation Reform Act of 1995 ("PLRA"), which Congress passed in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). A "centerpiece" of the PLRA was the "'invigorated'" exhaustion requirement, *Woodford*, 548 U.S. at 84 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)), which provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *Porter*, 534 U.S. at 532.

Exhaustion of administrative remedies requires that (1) no remedies currently remain available, and (2) the remedies that had been available to the prisoner were "properly" exhausted. *Woodford*, 548 U.S. at 93. Whether the remedies were properly

exhausted depends on "[c]ompliance with the prison grievance process," not any rules defined by the PLRA. *Jones*, 549 U.S. at 218. In other words, "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The "one significant qualifier" in the statute is that "the remedies must indeed be 'available' to the prisoner." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). "Available" means "'capable of use,'" and thus the "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1858-1859 (citation omitted). The Supreme Court has identified three examples of circumstances that make a procedure unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-1860.

### b.    Arguments and Application

The overarching issue is whether Plaintiff failed to exhaust his administrative remedies. But the parties first tussle over whether the PLRA applies to Plaintiff's time at Open Door. As a threshold matter, Defendants are right that the PLRA covers complaints filed "by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). *See* (Doc. 50, at PageID.283.) This language focuses the inquiry on whether the plaintiff was a prisoner at the time of filing; if so, the PLRA generally applies to the

complaint. *See Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) ("Because he was clearly a 'prisoner' at the time he filed suit, Napier was subject to the PLRA's requirements."); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3rd Cir. 2001) ("[T]he PLRA[] requires that the plaintiff exhaust administrative remedies, but only if the plaintiff is a prisoner at the time of filing."). Here, there is no dispute that Plaintiff was imprisoned when he filed the complaint, and thus the PLRA generally applies if the other statutory requirements are met.

One of those requirements is that the claim be "brought with respect to prison conditions." 42 U.S.C. § 1997e(a). Defendants observe that Plaintiff was a parolee while at Open Door and therefore "remain[ed] in the legal custody and under control of the [Michigan Department of Corrections]." Mich. Comp. Laws 791.238(1). *See* (Doc. 50, at PageID.284-285.) They then switch to the requirement in 42 U.S.C. § 1997e(a) discussed above that the "prisoner" must be "confined in any jail, prison, or other correctional facility." Courts have found that halfway houses qualify as correctional facilities under this language. (*Id.*, at PageID.285 (citing *Jackson v. Johnson*, 475 F.3d 261, 266-67 (5th Cir. 2007); *Witzke v. Femal*, 376 F.3d 744, 751-753 (7th Cir. 2004).) Because he was involuntarily confined at Open Door, he meets this requirement, according to Defendants. (*Id.* at PageID.285-286.)

The problem with Defendants' argument is that it focuses on the wrong textual language. The text Defendants analyze explains *where* the prisoner must be when the action is brought. But the germane statutory language instead describes *what* the action must be about: it must "be brought with respect to prison conditions." 42 U.S.C. § 1997e(a). *But*

12

*see Witzke v. Femal*, 376 F.3d 744, 752 (7th Cir. 2004) (linking the two pieces by reading them to require exhaustion of complaints about conditions of confinement in "'any jail, prison, or other correctional facility'"). The closest Defendants come to addressing the relevant statutory language is their argument that the alleged religious programming appears to have been a condition of confinement. (Doc. 50, at PageID.285.) For his part, Plaintiff does not offer a statutory interpretation. Rather, he says that Open Door had a curfew and restrictions, was intended to "assist homeless people," and that "all residents there are there through court and[/]or parole." (Doc. 55, at PageID.349.) He adds that neither the court nor the parole board ordered him specifically to attend Open Door. (*Id.*)

In reply, Defendants focus on whether the religious programming was a condition of parole, although they do not explain why this is important. The only relevant parole condition, they point out, was that Plaintiff remain at a "DRC-RSAT" and not change his address without the parole agents' permission. (Doc. 56, at PageID.370; *see also id.*, exh. A., at PageID.376-377.) "There is no indication that participation in religious programming was a condition of parole or that Veeder raised the issue with either parole agent." (*Id.*, at PageID.370.) In sum, then, they contend that the programming itself was not a parole condition and Plaintiff never complained about it to Defendants.

Thus, Defendants' argument begins by examining the phrase "prison conditions" but neither they nor Plaintiff offer any interpretation of that phrase. Instead, the contentions wander off into a different field. I will follow them because they stumble across the dispositive matter. Consequently, I assume for present purposes that Plaintiff's allegations concerning Open Door relate to "prison conditions" under 42 U.S.C. § 1997e(a). *See, e.g.*,

*Witzke*, 376 F.3d at 752-53 (finding that complaints of conditions at halfway houses fell under § 1997e(a)); *Groomes v. Parker*, No. 08-2028, 2008 WL 4057763, at *1 n.1 (W.D. Tenn. Aug. 26, 2008) ("The word 'prison' is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses."). The dispositive question the parties dance around is whether a grievance procedure was "available" to Plaintiff regarding Open Door. The answer to this question requires examining the MDOC grievance process.

The formal grievance structure is "equally available to all prisoners . . . and all parolees," but not probationers. MDOC PD 03.02.130(D) (eff. 7/9/2007). "Grievances may be submitted regarding," among other things, "alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." MDOC PD 03.02.130(E). Certain issues with parole, however, are not grievable. Pertinently, "Decisions made by the Parole Board to grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a public hearing." MDOC PD 03.02.130(F)(3).

If MDOC's grievance procedure ended there, Plaintiff's complaints were likely grievable and thus he needed to exhaust them. But there is more, just not in the grievance Policy itself. Defendants have attached a "Probation/Parole Orientation Guide" from July 2015 bearing Plaintiff's signature. (Doc. 50, exh. C, at PageID.314-316.) Paragraph 13 of the Guide states, "Informed the offender that decisions made by the Court/Parole Board, content of Policy Directives, Operating Procedures, Work Statements and Conditions of Parole or Probation are not grievable." (*Id.* at PageID.316.) It is not entirely clear how

14

broadly the bar on grieving "Conditions of Parole" extends, and I have discovered no caselaw on the topic. It is possible that the phrase simply means he could not challenge the Parole Board's decision to impose a condition, such as that he stay at a substance abuse program. Under this interpretation, the conditions of confinement at the program—for example, the incidents that occur while residing there—could still be grieved. This seems to capture the underlying logic of Defendants' argument that "[t]here is no indication that participation in religious programming was a condition of parole." (Doc. 56, at PageID.370.)

Alternatively, the "Conditions of Parole" might encompass all conditions that flow from the parole terms. From this perspective, a "Condition of Parole" was attending a substance abuse program, he was sent to Open Door pursuant to that condition, and while there he was forced to participate in religious activities. Thus the "Condition of Parole" resulted in the alleged constitutional violations. This is the gist of Plaintiff's argument. (Doc. 55, at PageID.350-351.)[5]

_____

[5] It is not clear whether Plaintiff's interpretation would cover most parolee grievances, thus swallowing up the main Policy's exhaustion requirements for parolees. MDOC PD 03.02.130(D)-(E). See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("'[T]he courts must . . . lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory.'" (citation omitted)). Such an interpretation would cut against the clear intent of the Guide, which cites MDOC PD 03.02.130 and discusses the parolee's grievance responsibilities right next to the line that "Conditions of Parole" are not grievable. (Doc. 50, exh. C, at PageID.314-316.) In other words, it must be the case that parolees are required to file grievances on some matters and if Plaintiff's interpretation nullifies that requirement, it is suspect.

But a strong argument could be made that Plaintiff's interpretation is not overly capacious. The limiting factor here is the tight nexus between the "Condition of Probation" and the alleged religious programming. Plaintiff had to be placed at a substance abuse center; the fact that it happened to be Open Door, with the alleged religious requirements, does not make the placement any less a "Condition of Probation." Put differently, the "Condition of Probation" here was carried out by putting Plaintiff at a center with allegedly mandatory religious training. The compulsory character of the training is critical because it necessarily arises from the "Condition of Probation" that he be placed at a center and the agents' apparent

15

The interpretation does not, however, need to be definitively resolved: an independent route to rejecting Defendants' motion is provided by Plaintiff's allegations that they stymied his attempts to file a grievance concerning Open Door. Specifically, Plaintiff contends that Defendant Eagle and another agent told him he could not file a grievance concerning Open Door. (Doc. 55, at PageID.350.) After being jailed for absconding from Open Door, he requested and was denied a grievance from Defendant Eagle. (*Id.*) "Every time he requested one" in jail, the grievance form was made unavailable. (*Id.*)

As noted above, a grievance process is not "available" if the plaintiff's attempt to file a grievance was thwarted "through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1860. Courts have held that prison officials may render the process unavailable if they provide incorrect information about filing or fail to respond appropriately to a plaintiff's request to file. *See, e.g.*, *Davis v. Fernandez*, 798 F.3d 290 (5th Cir. 2015) ("Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process."); *Pavey v Conley*, 663 F.3d 899, 906 (7th Cir. 2011) ("An administrative remedy is not 'available,' and therefore does not need to be exhausted, if prison officials erroneously inform an inmate that the remedy does not

---

choice of Open Door. Contrast this with an allegation that, for example, the staff assaulted a parolee residing at the center. The assault would be merely incidental to the placement and thus not part of the "Condition of Probation." Defendants' interpretation would leave little work for the Guide's bar on grievances concerning "Conditions of Parole" if that bar did not also include how the conditions of parole are executed. Under their interpretation, the only non-grievable contention might be that the condition was imposed at all, not what the condition effectively entailed.

16

exist or inaccurately describe the steps he needs to take to pursue it."); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("When a prisoner has no means of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable."); *Brown v. Croak*, 312 F.3d 109, 112 (3rd Cir. 2002) (finding that the plaintiff raised a question of fact about the availability of grievances when he was given incorrect filing information); *Smith v. Woods*, No. 9:03-CV-480, 2006 WL 1133247, at *15 (N.D. N.Y. April 24, 2006) ("[C]ase law exists supporting the proposition that, assuming plaintiff was instructed by prison officials, contrary to prison regulations, that he could not file a grievance, and plaintiff indeed did not initiate the grievance process by filing that grievance in reliance on that misrepresentation," the process was unavailable.) However, the Sixth Circuit has indicated that even in these situations, "the prisoner must make some affirmative efforts to comply with the administrative procedure." *Brock v. Kenton Cty, Ky*, 93 F. App'x 793, 798 (6th Cir. 2004). The efforts must be "'sufficient under the circumstances.'" *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

Here, Plaintiff asserts that he made numerous attempts to file a grievance but was misled and obstructed each time. He indicates a few specific staff members, including Defendant Eagle, who blocked his efforts. (Doc. 55, at PageID.350.) Defendants provide notes of parole agent meetings with Plaintiff while he resided at Open Door. (Doc. 56, exh. B, at PageID.379-380.) None of the entries indicate Plaintiff had complained of the religious programing or sought grievances. But these notes do not necessarily contradict Plaintiff's claim that he sought and was denied grievances *after* he left Open Door. (Doc.

55, at PageID.350.) And if the staff members were erroneously denying him grievances while he was at Open Door, they might be disinclined to memorialize this fact in the record. Consequently, even assuming that he was otherwise required to file grievances concerning Open Door, a material question of fact might exist as to the availability of the grievance process.

Ultimately, this question should not yet be decided because discovery has not yet occurred. As the Sixth Circuit has observed, "Although Rule 56(b) allows a party to file for summary judgment 'at any time,' Fed. R Civ. P. 56(b), '[t]he general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery.'" *Moore v. Shelby Cty., Ky.*, 718 F. App'x 315, 319 (6th Cir. 2017). The non-movant generally must tell the court of the need for discovery, *id.*, which Plaintiff has not done here; but various courts have refused to grant summary judgment, seemingly without regard to whether the non-movant provided notice, because the lack of discovery had obscured whether remedies were available. *See Dillon*, 596 F.3d at 268-269 ("Unfortunately, we are unable to determine whether the district court's grant of summary judgment was appropriate, as no discovery has been conducted in this case and the record is fragmentary as a result."); *Brown*, 312 F.3d at 112 ("Defendant have not met their burden of proving the affirmative defense of failure to exhaust remedies. Therefore, this question may not be resolved as a matter of law by this Court without further discovery. . . . Brown's claim that prison officials told him to wait is a factual question that is disputed, has not yet been disproved by defendants, and has not been resolved adequately by a trier of fact.").

18

Here, additional evidence is needed to resolve the dispute over the availability of the grievance procedures. For instance, it might be useful to have testimony or other evidence concerning the availability of grievance forms at Open Door or the other locations Plaintiff resided, as well as testimony from those involved concerning Plaintiff's requests for grievances.[6] Additional evidence on how MDOC handles grievances from parolees at institutions like Open Door might also elucidate the disputed facts.

One problem with this approach is that the "evidence" creating a factual dispute comes from assertions in Plaintiff's brief. This presents a wrinkle because Rule 56 requires parties to cite "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(B). The court can also consider any materials in the record not cited by the parties. Fed. R. Civ. P. 56(c)(3). However, statements in a party's brief are not admissible and are not in Rule 56's list of evidence the Court can consider. *Caruthers v. Correctional Med. Serv., Inc.*, No. 1:10-cv-274, 2011 WL 6402278, at *2 (E.D. Mich. Dec. 21, 2011). Consequently, "[i]t is well established that statements appearing in a party's brief are not evidence." *Id.* (citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006)). Under this rule, then, Plaintiff's brief does not provide an evidentiary basis for establishing material disputes of fact.

---

[6] Defendants attached to their motion a Grievance Report for Plaintiff showing that he failed to take any grievance to the final step of the formal process. (Doc. 50, exh. A., at PageID.300.) The report does not disclose, however, his requests for grievances.

This problem, however, does not mean that Plaintiff must lose. Rule 56(e) provides courts various options when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." These include:

> (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;

> (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or

> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This provision does not require a non-movant to offer an affidavit or declaration that facts are unavailable, as he or she must do to obtain relief under Rule 56(d). *See Stevenson v. Brennan*, No. 06-15182, 2018 WL 1250477, at *3 (E.D. Mich. Mar. 12, 2018) (providing the opportunity to supplement the record under Rule 56(e), but not Rule 56(d), where the plaintiff failed to provide a declaration or affidavit).

I suggest that the "appropriate order" here is to deny Defendants' motion and allow discovery to proceed, with the possibility that further factual development might later justify summary judgment on this ground. For one thing, it would be simple to convert Plaintiff's assertions into proper "Rule 56" form. Under 28 U.S.C. § 1746, whenever

> any matter is required or permitted to be supported, evidenced, established, or proved by [a] sworn declaration . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury.

Thus, Plaintiff's same assertions made under penalty of perjury, even if not sworn before someone authorized to administer oaths, would be permissible Rule 56 evidence. *See Owens v. Hinsley*, 635 F.3d 950, 954-955 (7th Cir. 2011) ("Nevertheless, a declaration under § 1746 is equivalent to an affidavit for purposes of summary judgment.") Additionally, as noted before, discovery could illuminate the grievance process for parolees at substance abuse centers, like Plaintiff, and could establish (or contradict) his specific allegations that his efforts to file a grievance were thwarted.[7]

For these reasons, I recommend denying Defendants' motion against Defendants based on failure to exhaust.

### 3.  Additional Screening

Despite my recommendation against granting Defendants' motion for summary judgment on exhaustion grounds, I nonetheless recommend *sua sponte* dismissing any claims against Defendant Magipora concerning Plaintiff's placement at Open Door. Plaintiff is proceeding *in forma pauperis*, subjecting his claims to *sua sponte* review and dismissal if they are frivolous or malicious, fail to state a claim upon which relief can be granted, or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Courts wield a similar initiative under 42 U.S.C. § 1997e(c)(1):

---

[7] It is also noteworthy that the Sixth Circuit apparently credited a plaintiff's factual assertions made in a brief and a pleading when reversing the grant of summary judgment. *Himmelreich v. Fed. Bur. of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014). In that case, the court had to decide if a genuine issue of material fact existed as to whether prison officials rendered the grievance process functionally unavailable by intimidating plaintiff. *Id.* In finding that the plaintiff demonstrated a material issue of fact, the court cited only to assertions made in his response to the motion for summary and in his complaint. *Id.* at 577-578. There was no indication that the cited materials came from declarations, affidavits, or other appropriate Rule 56 materials. While the court did not address the nature of the evidence, the case provides some support for denying the motion here.

> The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted.

This case remains at the screening stage. The Court thus has a continuing obligation to review Plaintiff's complaint. The standards for reviewing whether a complaint states a claim under § 1983 are laid out above; specifically, the complaint must allege that the actor was personally involved in the deprivation of constitutional rights. Fed. R. Civ. P. 12(b)(6); *Heyerman*, 680 F.3d at 647. Here, the complaint does not connect Defendant Magipora to Open Door. It states, "Parole Agent Sandra Eagle in July of 2015 along with William Raliegh, supervisor of Midland County Parole and Probation forced Randy Veeder to reside at Open Door[.]" (Doc. 25, at PageID.134.) No other individuals are named in the complaint regarding the events at Open Door and nothing links Defendant Magipora to that period. Instead, the complaint has him arriving on the scene in January 2017 when he sent Plaintiff to Tri-Cap. (Doc. 55, at PageID.135.) Consequently, the complaint does not state a claim against Defendant Magipora about the alleged violations of Plaintiff's rights occurring at Open Door.[8] Accordingly, I recommend that any such claim against Defendant Magipora be dismissed.

---

[8] True, Plaintiff's brief states that both Defendants Magipora and Eagle "forced Veeder to reside at open door." (Doc. 55, at PageID.349.) But "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss, nor can it be amended by the briefs on appeal." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *see also Ross v. Federal Nat'l Mortg. Assoc.*, No. 13-12656, 2014 WL 3597633, at *8 n.1 (E.D. Mich. July 22, 2014) (same). While I considered above the factual assertions in Plaintiff's brief under Rule 56(e), no such analogous provision exists for Rule 12(b)(6), which provides the governing standard here. The deficiency in plaintiff's complaint, then, is unlike the evidentiary shortcomings in his argument against motion for judgment. Rectifying the pleading deficiency

## III.    Conclusion

In light of the above analysis, **IT IS RECOMMENDED** that Defendants Eagle and Magipora's motion to dismiss claims regarding the alleged sexual assault be **GRANTED,** that their motion for summary judgment on claims relating to religious programming at Open Door be **DENIED**, and that claims against Defendant Magipora concerning Open Door be *sua sponte* **DISMISSED**.

## IV.    Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to

---

requires recourse to the Rule 15 amendment process. Plaintiff has not yet invoked that process to add claims against Defendant Magipora relating to Open Door.

be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 13, 2018                         S/ PATRICIA T. MORRIS
                                                 Patricia T. Morris
                                                 United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Randy Veeder #244093, Carson City Correctional Facility, 10522 Boyer Road, Carson City, MI 48811.

Date: December 13, 2018                          By s/Kristen Castaneda
                                                 Case Manager